**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**GUARANTY BANK,**

          Plaintiff,

                                                          **Case No. 05-C-1301**

      -vs-

**GREAT NORTHERN INSURANCE CO.,**
**FEDERAL INSURANCE CO.,**

          Defendants.

---

## DECISION AND ORDER

---

In 2002, Guaranty Bank was sued for trademark infringement in a federal court in Michigan. After an adverse ruling on a motion for preliminary injunction, Guaranty Bank requested indemnification from the defendants, Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal"), pursuant to a general liability policy and an umbrella policy. Both insurance companies refused to defend or indemnify, and the case ultimately settled for $200,000.00. Guaranty Bank brought the instant lawsuit to recover the settlement amount (plus interest), along with costs and fees incurred in resolving the Michigan lawsuit.

Now before the Court are cross-motions for summary judgment. For the reasons that follow, the defendants' motion is granted, Guaranty Bank's motion is denied, and this case is dismissed in its entirety.

## BACKGROUND

Guaranty Bank is a savings bank with its principal place of business in Milwaukee, Wisconsin. Great Northern is incorporated in Minnesota. Federal, Great Northern's co-defendant, is incorporated in Indiana. Great Northern and Federal maintain their principal places of business in New Jersey.[1]

Great Northern provided Guaranty Bank with general liability coverage under Policy No. 3538-50-81, with a policy term of September 30, 2002 through September 30, 2003 (the "Great Northern Policy"). The Great Northern Policy had an aggregate limit of $5,000,000 and an advertising and injury limit of $1,000,000. The premium was $38,998.10.

Federal provided Guaranty Bank with commercial umbrella coverage under Policy No. 7921-95-29 with a policy term of September 30, 2002 through September 30, 2003 (the "Federal Policy"). The Federal Policy provided that it would pay on behalf of Guaranty Bank "that part of the loss covered by this insurance in excess of the total applicable limits of underlying insurance. . . ."[2]

On November 26, 2002, an entity unrelated to Guaranty Bank, Midwest Guaranty Bank ("Midwest Guaranty"), filed a complaint against Guaranty Bank in the United States District Court for the Eastern District of Michigan. The allegations of the Michigan lawsuit

---

[1] This case was removed to federal court on December 16, 2005. The Court has diversity jurisdiction, as the parties are completely diverse and the amount in controversy exceeds $75,000.00. (See Petition for Removal, Docket No. 1). While the Amended Complaint names The Chubb Corporation as an additional defendant, Chubb is merely a holding company and is not a real party in interest to this action. (Docket No. 1, Petition for Removal; Docket No. 3, Answer to Complaint, First Affirmative Defense). Even if Chubb were considered a party to this action, Chubb is from New Jersey, so the parties would still be completely diverse.

[2] While unclear at the commencement of this litigation, Guaranty Bank concedes that the Federal Policy is not implicated by the amount of recovery sought in the instant lawsuit.

-2-

revolved around Guaranty Bank's public announcement to "enter the same geographic market as Midwest Guaranty Bank." Midwest Guaranty Bank alleged that this caused actual and likely "confusion among Midwest Guaranty Bank's customers and others as to the source of Guaranty Bank's financial services and products, as well as the financial services and products of Midwest Guaranty Bank." The Michigan complaint alleged four counts against Guaranty Bank: (1) Violation of the Lanham Act; (2) Common law unfair competition; (3) Common law trademark infringement; and (4) Violation of the Michigan Consumer Protection Act.

Midwest Guaranty Bank brought a motion for Preliminary Injunction against Guaranty Bank on January 29, 2003. On June 5, 2003, U.S. District Judge Paul D. Borman granted a preliminary injunction in favor of Midwest Guaranty Bank, restraining Guaranty Bank from using its name in conjunction with its banking and related financial services in Southeast Michigan.

Guaranty Bank provided notice of the Michigan lawsuit to Great Northern and Federal on June 11, 2003. On June 16, 2003, defendants provided notice to Guaranty Bank that "coverage will not apply." On June 17, 2003, Great Northern denied coverage in writing.

On June 18, 2003, Guaranty Bank requested that Great Northern reconsider its initial denial of coverage and agree to indemnify and defend Guaranty Bank in the Michigan lawsuit. After waiting a month for a response, Guaranty Bank e-mailed Great Northern on July 18, 2003, stating that "as [Great Northern] has not responded to our request to participate in settlement discussions, I assume that it is waiving any right to do so and agrees

-3-

to be bound by any settlement terms that are ultimately attained by the parties." On July 21, 2003, Great Northern denied coverage for a second time.

As a result of Great Northern's denial of coverage, Guaranty Bank was forced to defend itself and pay to settle the Michigan lawsuit. On August 29, 2003, Guaranty Bank settled the Michigan lawsuit for a sum of Two Hundred Thousand Dollars ($200,000.00). Guaranty Bank incurred $153,967.94 in costs and attorneys fees in defense of the Michigan lawsuit.

## ANALYSIS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Upon the issuance of a general liability policy to Guaranty Bank, Great Northern assumed two principal duties under Wisconsin law[3] with regard to third-party liability claims: (1) a duty to defend; and (2) a duty to indemnify. *See Elliot v. Donahue*, 169 Wis.

---

[3] In a diversity case, the Court must apply state substantive law, and the parties agree that Wisconsin law applies to the interpretation of the Great Northern insurance policy. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999).

-4-

2d 310, 321, 485 N.W.2d 403 (1992).  However, the "insurer's right to receive timely notice of a claim so that it may timely investigate it is a condition precedent to the insurer's contractual duties to both defend and indemnify."  *U.S. Fire Ins. Co. v. Green Bay Packaging, Inc.*, 66 F. Supp. 2d 987, 1000 (E.D. Wis. 1999).

Great Northern argues that Guaranty Bank did not provide timely notice of its claim. The Great Northern policy requires that the insured "immediately send . . . copies of any demands, notices, summonses or legal papers received in connection with the claim or suit." (Defendant's Proposed Findings of Fact, ¶ 41).  Guaranty Bank did not give notice of the claim until June 11, 2003 – six months after the Michigan lawsuit commenced, and shortly after the Michigan court entered a preliminary injunction against Guaranty Bank.  Guaranty Bank does not dispute that its notice was untimely under the express terms of the policy.

Aside from this contractual language, two Wisconsin statutes govern the issue of timely notice.  Wis. Stat. § 631.81(1) provides:

> TIMELINESS OF NOTICE.  Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim *unless the insurer is prejudiced thereby* and it was reasonably possible to meet the time limit.

(emphasis added).  As relevant here, Wis. Stat. § 632.26(2) provides:

> **Effect of failure to give notice.**  Failure to give notice as required by the policy . . . *does not bar liability under the policy if the insurer was not prejudiced by the failure,* but the risk of nonpersuasion is upon the person claiming there was no prejudice.

(emphasis added).

-5-

Accordingly, Guaranty Bank argues that Great Northern was not prejudiced by the late notice. Prejudice to the insurer is a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the insured to provide timely notice. *See Phoenix Contractors, Inc.*, 2004 WI App 103, ¶ 21, 272 Wis. 2d 736, 681 N.W.2d 310 (citing *Neff*, 2001 WI at ¶ 44). The "risk of nonpersuasion is upon the person claiming there was no prejudice," which in this case is Guaranty Bank. *Neff v. Pierzina*, 2001 WI 95, ¶ 58, 245 Wis. 2d 285, 629 N.W.2d 177 (2001) (citing Wis. Stat.§ 632.26(2)).

Approximately six months after the lawsuit was filed, Judge Borman held an evidentiary hearing, entertained oral argument, and ultimately issued a detailed and extensive opinion which enjoined Guaranty Bank from using its mark in southeast Michigan. (Docket Nos. 32-11, 32-12). It was only *after* Judge Borman issued his decision that Guaranty Bank saw fit to give notice of the claim. It is of course technically true that the litigation was still ongoing at that point. But this was a serious, adverse ruling that made the ultimate disposition of the case a mere formality.

There can be no doubt that Great Northern was prejudiced by Guaranty Bank's unexcused failure to give timely notice. Great Northern was given no opportunity to investigate the claim or participate in the defense until *after* the merits of the case were decided. It is true that Great Northern could have entered the fray for purposes of the ongoing settlement discussions. But Guaranty Bank's settlement position at that point – to put it mildly – was not advantageous. The situation as it unfolded was inherently prejudicial.

-6-

Guaranty Bank does not dispute that its late notice was prejudicial to the interests of Great Northern. Rather, Guaranty Bank argues that Great Northern was not prejudiced because Great Northern would not have acted differently even if it *was* given timely notice. *See, e.g., Maryland Cas. Co. v. Wausau Chem. Corp.*, 809 F. Supp. 680, 695 (W.D. Wis. 1992) (finding no prejudice as a matter of law where there was evidence that insurers would not have acted differently even if the insured had given timely notice). The evidence before the Court demonstrates otherwise.

When Guaranty Bank finally gave notice of the claim, Great Northern was notified of the adverse ruling by Judge Borman. (Docket No. 32-14, Cunningham Affidavit Exhibit L). In its initial response, Great Northern denied coverage, citing a variety of policy exclusions, including the timeliness provisions which "have been violated [and] may serve as an additional basis to further limit coverage under the policy." (Docket No. 32-15, Exhibit M). In explaining why it was denying coverage, Great Northern explicitly relied upon the language and reasoning in Judge Borman's Order.

Guaranty Bank wrote back, renewing its request for coverage. As to timeliness, Guaranty Bank argued that "assuming [Great Northern] would have denied coverage in any event on the other grounds stated in your letter no matter when it received notice of the Suit, any delay in providing notice of the suit would not be deemed prejudicial." (Docket No. 40, Exhibit A). A month later, Great Northern denied coverage once again, making no mention of the timeliness issue, but reserving its right to cite additional policy provisions as

-7-

appropriate. (Docket No. 40, Exhibit C). Once again, Great Northern referenced Judge Borman's order in explaining why it was denying coverage.

Based on this correspondence, Guaranty Bank argues that the late notice had no impact on whether Great Northern would have denied coverage and its duty to defend. While Great Northern's response focused on substantive coverage issues, Great Northern cited the timeliness provision as an alternative basis for denying coverage. Also, Great Northern explicitly relied on the language in Judge Borman's opinion in explaining why coverage did not apply.

For example, in the initial correspondence denying coverage, the claims officer explained:

> Additionally, *according to the order granting plaintiff's motion for preliminary injunction,* Guaranty's executive chairman was aware in August 2002 that Midwest Guaranty was operating in the relevant area and, counsel for Midwest Guaranty sent a cease and desist letter to Guaranty shortly after Guaranty opened it[s] first in-store branch. In that light, the Expected Or Intended Injury exclusion may also apply to further preclude coverage.

(Docket No. 32-15) (emphasis added). In subsequent correspondence, the claims officer continued her reliance on Judge Borman's order:

> *The Order granting Plaintiff's Motion for Preliminary Injunction states that* only days after Guaranty opened its first in-store branch, plaintiff's counsel sent a cease and desist letter to Guaranty. The order goes on to state that 'Finally, and most important, Guaranty was well aware of the risks associated with entering a market in which a direct competitor was already utilizing a confusingly similar mark because Guaranty has a history of aggressively attacking the use of the work [*sic*] "Guaranty" by others in its market.' The insured entered the Michigan market with the knowledge of the plaintiff's use of the

-8-

> Guaranty name, and with a history of enforcing its own common law rights against at least two other financial institutions. Even if it is shown that Guaranty Bank did not intend to cause confusion, it does appear the insured had the experience and information at hand with which to determine that confusion would be a very likely result of their actions.

(Docket No. 40, Exhibit C) (emphasis added).

Admittedly, the exclusion being discussed in these passages was "not the sole basis for" Great Northern's coverage position. (*Id.*) But the correspondence demonstrates that Judge Borman's Order had a measure of influence on Great Northern's decisionmaking. Therefore, the Court cannot conclude, as a matter of law, that Great Northern would have denied coverage even in the absence of the adverse ruling from Judge Borman. Ultimately, it was Guaranty Bank's burden to demonstrate that Great Northern was not prejudiced by the late notice. Guaranty Bank provides no concrete evidence that Great Northern would have rejected coverage if notice was given in a timely manner.

On the issue of prejudice, Guaranty Bank relies on *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 63, 261 Wis. 2d 4, 660 N.W.2d 666. In *Fireman's Fund*, the insured waited until 15 months after the claim and *two weeks* before trial to give notice. Despite this long delay, the court held that the insurer was not prejudiced, but only because the insurer's litigation manager "testified that he would have denied a duty to defend on the exact same complaint *even if he had been provided with notice only one month after the . . . lawsuit was filed*." *Id.* at ¶ 62 (emphasis added). This admission by the insurer was undisputed. *Id.* at ¶ 63. Accordingly, in *Fireman's Fund* there was undisputed evidence that

-9-

"the timing of [the] notice would not have changed the Insurance Company's decision to deny its duty to defend." *Id.* Therefore, *Fireman's Fund* is easily distinguishable.

## CONCLUSION

Great Northern was placed in an awkward and prejudicial litigation position because of Guaranty Bank's failure to give timely notice. To be sure, Great Northern's decision to deny coverage and refuse to defend Guaranty Bank was extremely risky. *See, e.g., Production Stamping Corp. v. Maryland Cas. Co.*, 199 Wis. 2d 322, 327, 544 N.W.2d 584 (Ct. App. 1996) (insurer that declines to defend does so at its own peril); *Radke v. Fireman's Fund Ins. Co.*, 217 Wis. 2d 39, 43, 577 N.W.2d 366 (Ct. App. 1998) ("When an insurer wrongfully refuses to defend on the grounds that a claim against its insured is not within the coverage of the policy, the insurer cannot later contest coverage, but is liable to the insured"). While Great Northern's course of action was perhaps inadvisable, it is not the Court's role to pass judgment in that respect.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. The defendants' motion for summary judgment [Docket No. 29] is **GRANTED**;

2. Guaranty Bank's motion for summary judgment [Docket No. 37] is **DENIED**; and

3. This matter is **DISMISSED** in its entirety.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2007.

                                           **SO ORDERED,**

                                           **s/ Rudolph T. Randa**
                                           **HON. RUDOLPH T. RANDA**
                                           **Chief Judge**